United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENT H. ROBERTS,

    Plaintiff,

    v.

MCAFEE, INC.,

    Defendant.
_____/

No. C 09-4303 PJH

**ORDER RE MOTION TO STRIKE AND MOTION TO DISMISS**

    Defendant's motion for an order striking the complaint pursuant to California Code of Civil Procedure § 425.16, or in the alternative, dismissing all causes of action for failure to state a claim, came on for hearing before this court on November 25, 2010. Plaintiff appeared by his counsel Hal Gillespie and Mary Dryovage, and defendant appeared by its counsel Lynne Hermle and Eunice Lee.

    Having read the parties' papers, including the supplemental briefs requested by the court, and having carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion to strike in part and DENIES it in part; and GRANTS the alternative motion to dismiss in part and DENIES it in part.

**BACKGROUND**

    Plaintiff Kent H. Roberts ("Roberts") is the former General Counsel of defendant McAfee, Inc. ("McAfee"). Roberts alleges that McAfee falsely accused him of involvement in the backdating of options while he was employed at McAfee. Roberts was criminally prosecuted and was the subject of a civil enforcement action by the SEC; however, all charges/claims were eventually dismissed.

During his eight years at McAfee, Roberts served in various capacities as in-house counsel. He joined McAfee's predecessor, Network Associates, Inc., as Director of Legal Affairs in May 1998. In January 2000, he was promoted to Senior Director of Legal Affairs, and in February 2000 he became Vice President of Legal Affairs. He received no grant of stock options at the time of his promotion to Vice President.

In July 2000, a new personnel action form was authorized, indicating that Roberts received a grant of 20,000 shares with an exercise price as of February 14, 2000, in connection with his promotion to Vice President ("the promotion grant"). McAfee's stock closed at $29.65 as of that date.

The Compensation Committee of the Board of Directors ("BOD") ratified the Promotion Grant on July 13, 2000. The price of McAfee's stock as of that date was $23.56. Roberts alleges that McAfee's former controller Terry Davis ("Davis") subsequently backdated the Promotion Grant to April 14, 2000, when the price of McAfee's stock was $19.75 a share. According to Roberts, he asked Davis at the time whether he had the authority to do that, and Davis indicated that he did.

Roberts asserts that as of November 29, 2000, he had four outstanding option grants in addition to the promotion grant, and that three of the five (including the promotion grant) were "under water."

Roberts became General Counsel of the company and Corporate Secretary in January 2001, at approximately the same time that McAfee hired George Samenuk ("Samenuk") as President and Chief Executive Officer ("CEO"). Roberts became an Executive Vice President in July 2001, at about the same time that Samenuk became Chairman of the BOD.

Plaintiff alleges that after Samenuk joined McAfee, the BOD agreed to a large increase in the number of stock option grants (10.3 million shares). These are referred to as "the focal option grants," and were allegedly authorized in late January 2001, with a January 2, 2001 grant date.

In early 2002, the BOD approved an option grant to Samenuk ("the Samenuk merit

2

grant") of 420,000 shares. The grant was allegedly back-dated to January 16, 2002.

In the latter half of 2005, the financial press began to question stock-option backdating practices that had become widespread across industry lines. The following year, on May 16, 2006, the Center for Financial Research and Analysis ("CFRA") published a report entitled "Options Backdating – Which Companies are at Risk?"

The CFRA report reviewed stock option grants at numerous companies, and (among other things) highlighted five particular grant dates at McAfee, four of which occurred during Semanuk's tenure as CEO. The report stated that McAfee was one of the higher risk companies reported to have granted options at exercise prices and dates that matched or were close to a 40-day low in the stock price during 1997-2002.

The report also mentioned risks of accounting restatements, back tax payments, Securities and Exchange Commission ("SEC") investigations, and loss of management credibility. According to the complaint, the day the CFRA report came out, McAfee initiated an internal review of its options-granting practices.

At about the same time, the SEC began investigating McAfee's stock option award practices, as part of a larger nationwide investigation into stock option backdating. On Tuesday, May 23, 2006, the SEC submitted a document preservation request to McAfee, regarding stock-option information. This request, according to the complaint, put McAfee's BOD and senior management on notice of the SEC's informal investigation.

On the same date, Roberts had a telephone conversation with an SEC representative from the San Francisco office. According to Roberts, the SEC mentioned the publicity surrounding the CFRA report, and referred to a statement made by a McAfee representative that an internal review was taking place. She asked that McAfee preserve documents relating to its stock options program review.

Also on Tuesday, May 23, 2006, Roberts discussed the options issue with McAfee's outside counsel, Boris Feldman ("Feldman"), of the law firm of Wilson Sonsini Goodrich and Rosati. He states that he disclosed to Feldman his involvement in changing the dates of the Promotion Grant; and that the following morning, May 24, 2006, Feldman called him

and advised him how to handle the discussion of the Promotion Grant with Samenuk and the BOD members.

In the evening of Wednesday, May 24, 2006, Roberts, who was in New York for the annual shareholders meeting, met with Samenuk to discuss the options issues. Roberts disclosed his involvement in the change to the Promotion Grant, and Samenuk responded that Roberts risked losing his law license. Roberts told Samenuk that he believed he had done nothing wrong, and that Samenuk could reassure the BOD. Roberts claims that in an effort to protect McAfee (and themselves), Samenuk and the members of McAfee's BOD instituted a campaign aimed at shifting the attention of federal authorities away from Samenuk's and McAfee's misdeeds, and onto Roberts.

On Thursday, May 25, 2006, Roberts met again with Samenuk, and also with BOD member Robert Dutkowski ("Dutkowski"). Roberts explained the circumstances under which Davis had changed the option date, and suggested that the 2000 Promotion Grant be reviewed along with all the other option grants. Later that same day, Roberts explained the issues surrounding the 2001 Focal Grant and the 2000 Promotion Grant to BOD member Denis O'Leary ("O'Leary"). Roberts claims that O'Leary's initial response was to "lay blame at my feet." Roberts asserts that Dutkowski later told investigators that Roberts admitted conspiring to change the option, and that Dutkowski and Samenuk falsely reported to others that Roberts had "confessed."

At Samenuk's request, Roberts drafted a list of actions the BOD might take if, after due investigation, it concluded there was a problem with the change to Roberts' Promotion Grant. The list included the steps of terminating the grant, while making sure its existence was disclosed to the investigators and the SEC, terminating his officer status, removing him from McAfee's stock plan administration and ethics committees, making a public apology, providing an explanation to the SEC, and demotion.

As part of its internal investigation, McAfee had bought in the outside law firm of Howrey & Simon (now Howrey LLP) to conduct an independent investigation ("the Special Committee investigation"). The investigation was wide-ranging and lasted for several

4

months. The Special Committee's lead investigator was Robert Gooding ("Gooding").

During the initial stage of the internal investigation, the BOD was presented with three options with respect to Roberts – allow him to resign, terminate him for cause, or suspend him without pay while the investigation proceeded. According to a declaration provided by Roberts' attorney, Stephen C. Neal ("Neal"), Gooding advised Neal that McAfee was likely to take employment action against Roberts fairly quickly, almost certainly before the markets reopened after the Memorial Day weekend.

On Monday, May 29, 2006, McAfee terminated Roberts "for cause," asserting that he had engaged in an improper action in 2000 with respect to stock option grants. In terminating Roberts, the BOD cited admissions to "three directors" that Roberts had improperly orchestrated the backdating. McAfee publicly announced the termination in a press release issued on Tuesday, May 30, 2006. That same day, McAfee also filed a Form 8-K with the SEC, disclosing the termination and attaching a copy of the press release.

According to the complaint, McAfee at this time claimed that Roberts had "confessed" to improperly orchestrating the backdating of his 2000 Promotion Grant (the change in the date from February to April 2000). Roberts alleges that this representation was false, and that in summarily terminating him and then publicizing false accusations of impropriety (including statements made in the May 30, 2006 press release), McAfee destroyed his professional reputation and devastated his opportunities for future employment.

Also on May 30, 2006, McAfee's outside counsel Boris Feldman contacted the SEC and spoke to investigators on behalf of the BOD. According to Roberts, Feldman accurately reported Roberts' version of the story to the SEC. One of the SEC investigators called Feldman back the same day to confirm that McAfee had received the SEC's document preservation letter, and was taking steps to comply with the SEC's request.

On June 7, 2006, McAfee received an SEC subpoena seeking options-related documents. Among other things, the subpoena requested documents (including e-mails) relating to Roberts' 2000 Promotion Grant. At around the same time, McAfee received a

notice of informal inquiry from the DOJ concerning its stock option granting practices.

Roberts claims that the SEC's investigation into McAfee's options practices aggravated fears among board members of government action against them, and that the BOD engaged in a deliberate effort to divert attention onto him, in order to protect senior company officers. Roberts claims that the BOD called this effort – the attempt to scapegoat him and to protect Samenuk and the BOD – "Project Shield."

According to Roberts, "Project Shield" involved, among other things, the strategic withholding of key information and the deliberate disclosure of misinformation. Roberts asserts that one result of this effort was that McAfee, in its dealings with the SEC and the United States Department of Justice ("DOJ"), was able to minimize early concerns about grants other than Roberts' Promotion Grant.

According to the complaint, McAfee "was able to prioritize for federal investigators Roberts' relatively small (20,000 share) Promotional Grant ahead of concerns over the vastly larger 2001 focal grant (10.3 million shares) and its potential accounting impact that was orders of magnitude greater." Roberts also claims that McAfee succeeded in shielding Samenuk from scrutiny, and attempted to ensure that the directors of the company would not face questioning concerning their own involvement in options backdating.

Roberts asserts that "Project Shield" reached its apex with the presentation of the Special Committee investigation findings to the DOJ and SEC on November 2, 2006 ("the Gooding Report"). Roberts asserts that the Gooding Report omitted numerous key facts, and presented the evidence against him in a biased way, while presenting McAfee and the Special Committee in the best possible light.

On February 27, 2007, the United States Attorney for the Northern District of California indicted Roberts on seven felony counts, including mail and wire fraud, making false statements to the SEC, and falsifying company books and records. Roberts was the only McAfee officer indicted in connection with the stock option program, and he asserts that the indictment was based on McAfee's selective disclosure of information and withholding of evidence. The indictment was widely publicized in various newspapers.

The following day, February 28, 2007, the SEC filed a civil enforcement action against Roberts, asserting claims of fraud and altering company records, and also alleging that Roberts had filed false information with the SEC. Roberts claims that this action was also based on the inaccurate and incomplete information that McAfee had provided to the SEC. The SEC sought injunctive relief barring Roberts from serving as an officer of a public company, and also sought civil penalties and disgorgement of certain amounts allegedly gained by Roberts since 2000.

Meanwhile, Roberts alleges, McAfee's Finance Department reported to the Audit Committee in March 2007 that external auditors had halted work on the in-progress restatement of financial results, based on concerns about Howrey's work product. In response, McAfee reviewed the Special Committee report internally before performing any remedial work, and the Finance Department and Audit Committee also reviewed the questioned option grants.

Roberts asserts that the subsequent review later found that the CEO had delegated authority to issue 22,500 shares as of 2000, and that BOD action was therefore not required on grants of less than 22,500; that this authority had been delegated to certain Vice Presidents, Davis included, as of 2000; and that the February 14, 2000 date was the incorrect measurement date for Roberts' Promotion Grant.

According to the complaint, although McAfee's review had given the quality of Howrey's work a "marginal passing score," and although McAfee's incoming CEO opined that Howrey had "really screwed up," none of these conclusions were ever communicated to the SEC or federal prosecutors before the start of Roberts' criminal trial.

Starting in September 2007, the parties began to engage in discovery in the SEC civil enforcement suit. Roberts began by subpoenaing records from McAfee, including all e-mails relating to the 2000 promotion grant, all documents relating to Project Shield, and all internal and external criticisms of the Special Committee's work. Roberts alleges, however, that McAfee continued to withhold key documents from him and from the government.

Roberts also claims that starting in October 2007, notwithstanding the existence of an indemnity agreement that required McAfee to advance the costs of Roberts' legal defense, McAfee wrongfully ceased advancing Roberts the costs of his defense. According to Roberts, McAfee did this in order to inhibit his defense and in an effort to continue to shield unfavorable information.

In December 2007, McAfee filed a restatement of financial results affecting some 50 million option shares. While the company took a non-cash charge of approximately $76,000 relating to Roberts' Promotion Grant, Roberts claims this was a "fraud" by the company on the government and the company's investors, as proper accounting methodology would have produced no accounting charge on the Promotion Grant (as the options were still under water).

Prior to the commencement of the criminal trial on September 16, 2008, the U.S. Attorney dropped four of the seven felony counts, trying only the counts of wire fraud, mail fraud, and altering company books and records relating to Roberts' Promotion Grant.

At the conclusion of the trial, on October 3, 2008, the jury found Roberts not guilty of wire fraud and one of the counts of mail fraud, and hung as to the remaining counts. The court declared a mistrial as to those counts, and recommended against re-trying the case. The U.S. Attorney then filed a request to dismiss the remaining charges. Approximately five and a half months later, on March 20, 2009, the SEC voluntarily dismissed its civil proceedings against Roberts.

Roberts filed the present action on September 16, 2009, asserting four causes of action – malicious prosecution – bad faith involvement in criminal proceeding; malicious prosecution – wrongful use of civil proceedings; defamation and defamation per se (based on McAfee's posting of the May 30, 2006 press release on its website); and false light invasion of privacy (also based on the posting of the press release on McAfee's website).

McAfee now seeks an order striking all causes of action pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16, on the ground that they are premised on McAfee's response to government-initiated investigations of its stock options

8

practices. McAfee also asserts that Roberts cannot meet his anti-SLAPP burden of showing a reasonable probability that he can prevail on his claims.

In the alternative, McAfee seeks an order dismissing all causes of action for failure to state a claim. McAfee contends that the malicious prosecution claims should be dismissed because Roberts cannot establish the essential element of lack of probable cause, and cannot show that McAfee instigated the government's civil or criminal prosecutions. McAfee also seeks dismissal of the defamation and false light invasion of privacy claims, asserting that the claims are time-barred, that the statements on which they are premised are privileged and are not false.

With his opposition to McAfee's anti-SLAPP motion, Roberts has filed a Rule 56(f) motion for a continuance. He asserts that the Rule 56(f) motion is appropriate here, as McAfee's anti-SLAPP motion is similar to a motion for summary judgment.

## DISCUSSION

A. Legal Standards

    1.    Motions to Dismiss for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

### 2. Special Motions to Strike under California Code of Civil Procedure § 426.15

California authorizes what is known as a special motion to strike "Strategic Litigation Against Public Participation" or "SLAPP" suits. SLAPP suits "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003) (quotations omitted).

In enacting California's anti-SLAPP statute, the Legislature found a "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." Cal. Civ. P. Code § 425.16(a). Because "it is in the public interest to encourage continued participation in matters of public significance, and [because] this participation should not be chilled through abuse of the judicial process," the anti-SLAPP statute is to be construed broadly. Id.

The statute provides that

> [a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. P. Code § 425.16(b)(1).

In considering an anti-SLAPP motion, the court must ask, first, whether the suit arises from the defendant's protected conduct; and, second, whether the plaintiff has

10

shown a probability of success on the merits. Only a cause of action that satisfies both prongs of the anti-SLAPP statute is subject to being stricken under the statute. Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002).

Under the first inquiry, the court must determine whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity as defined in § 425.16. In re Episcopal Church Cases, 45 Cal. 4th 467, 477, cert. denied, 130 S.Ct. 179 (2009); see also Equilon Enters., LLC v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).

If the court finds that such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim. Episcopal Cases, 45 Cal. 4th at 477. That is, the court must determine whether "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Navellier, 29 Cal. 4th at 88-89 (citations and quotations omitted).

In this respect, a special motion to strike is akin to a motion for summary judgment. A plaintiff cannot rely solely on the allegations set forth in his pleadings, nor may the court simply accept those allegations. Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 656 (1996), overruled on other grounds by Equilon, 29 Cal. 4th at 68 n.5. Instead, a plaintiff must present "competent and admissible evidence" showing that he "probably" will prevail. Macias v. Hartwell, 55 Cal. App. 4th 669, 675 (1997). If he fails to meet this evidentiary burden, his complaint is stricken. Cal. Civ. P. Code § 425.16(b)(1).

"[T]hough the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 821 (2002); see also Cal. Civ. P. Code § 425.16(b)(2).

B.    McAfee's Motions

McAfee argues that the complaint meets both prongs of the anti-SLAPP statute.

First, McAfee asserts that the acts of which Roberts complains were taken in furtherance of McAfee's right of petition or free speech under the United States or California Constitution in connection with a public issue. Roberts does not contest this argument.

Second, McAfee contends that the allegations in the complaint are legally insufficient and fail make a prima facie showing of facts to sustain a judgment favorable to Roberts. McAfee argues that Roberts cannot prevail on the malicious prosecution claims because he cannot show lack of probable cause or that the government prosecutions were taken at the direction of McAfee, and that the defamation and false light claims are time-barred and the statements in the press release are privileged. For similar reasons, McAfee asserts that both the malicious prosecution and the defamation and false light claims fail to state a claim.

### 1. Malicious Prosecution Claims

In the first cause of action, Roberts alleges that McAfee "was actively involved in the events leading to Roberts' indictment and the continuation of the government's prosecution" and that it "fed information to federal authorities that it knew to be false." In the second cause of action, he asserts that McAfee "used Roberts as a scapegoat to divert the attention of federal authorities from its own misdeeds and the potentially criminal actions and securities laws violations of Samenuk and individual board members" and that it "fed information to federal authorities that it knew to be false."

The elements of a claim of malicious prosecution are (1) the underlying litigation was commenced by or at the direction of the defendant, and was pursued to a legal termination in the plaintiff's favor; (2) the litigation was brought without probable cause; and (3) the litigation was "initiated with" malice. Leonardini v. Shell Oil Co., 216 Cal. App. 3d 547, 566 (1989); see also Villa v. Cole, 4 Cal. App 4th 1327, 1335 (1992).

McAfee argues that the complaint fails to allege facts supporting either the first or second of these elements – that is, that Roberts cannot prove probable cause or that McAfee instigated the prosecutions at issue. In opposition, Roberts asserts that the complaint alleges sufficient facts to show that McAfee lacked probable cause, and also to

show that McAfee was instrumental in the government's prosecution. The court finds that the motion must be DENIED as to the malicious prosecution claims.

The existence of probable cause – whether the defendant had probable cause for instigating the prosecution – is a matter of law, and is to be determined by the court. Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863, 875 (1989). Where facts regarding the defendant's knowledge are undisputed, it is for the court to determine whether probable cause existed. Id. If the court determines that probable cause existed, the malicious prosecution claim fails. Id.

Where the claim is based on a criminal prosecution, probable cause exists if it was objectively reasonable for the defendant to suspect (not "know") that the plaintiff had committed a crime, even if the defendant did not understand what crime was committed. Ecker v. Raging Waters Group, Inc., 87 Cal. App. 4th 1320, 1332 (2001). Determination as to whether a crime should actually be charged is "authority properly vested in a prosecuting agency." Id.

Where the underlying matter is civil litigation brought by the defendant, probable cause exists "if any reasonable attorney would have thought the claim tenable." Sheldon Appel, 47 Cal. 3d at 886. "Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weight the competing evidence, or to abandon their claim if they think it likely that evidence will ultimately weigh against them." Wilson, 28 Cal. 4th at 822. It is not clear what standard applies where the claim is based on a civil enforcement action – possibly one adapted from the standard for a claim based on criminal prosecution.

Here, however, as the court previously indicated to the parties, disputed issues of fact preclude a finding of probable cause. Accordingly, the court cannot not find that Roberts is unlikely to prevail on this element of the malicious prosecution claim.

With regard to the question whether the DOJ/SEC prosecution was "commenced by or at the direction of" McAfee, there is no evidence that either the criminal prosecution or the SEC enforcement action was "commenced by" McAfee, or was "commenced . . . at the

direction of McAfee." While the DOJ/SEC may have initiated the formal investigation based on information it obtained from McAfee, Roberts has not established that the decision to prosecute was taken solely based on that information, or that the prosecutors did not conduct an independent investigation.

"[I]n most cases, a person who merely alerts law enforcement to a possible crime and a possible criminal is not liable if, law enforcement, on its own, after an independent investigation, decides to prosecute." Williams v. Hartford Ins. Co., 147 Cal. App. 3d 893, 898 (1983). Here, Roberts does not allege that the DOJ or SEC did not conduct an independent investigation. Rather, he claims that McAfee "tainted" the government's investigation with "misinformation and selective disclosures."

Roberts argues that prior to May 30, 2006, the attention of the DOJ/SEC was not focused on him, but that McAfee's publication of the press release on that date, in which it asserted that he had been terminated for "improper" behavior, led government investigators to focus on him. Roberts also contends that McAfee's Special Committee misled government investigators by falsely reporting that he had made statements to BOD members which he claims he did not make, and also "prioritized" the investigation of his option grants while de-emphasizing other elements of the internal investigation.

While it does appear, as McAfee argues, that the DOJ/SEC prosecutors issued notice and conducted independent investigations into Roberts' conduct before proceeding with charges against him, the court finds that disputed issues of fact regarding information provided by McAfee to the government investigators preclude a finding that Roberts cannot prevail on this element of the malicious prosecution claims.

In its alternative motion to dismiss the first and second causes of action for malicious prosecution for failure to state a claim, McAfee argues that those claims should be dismissed because Roberts cannot prove that McAfee had probable cause or that McAfee initiated the criminal or civil investigations – essential elements of the claim; and asserts that the third cause of action for defamation and the fourth cause of action for false light invasion of privacy should be dismissed because they are time-barred.

14

The court finds that the motion must be DENIED as to the malicious prosecution claims. The issue in a Rule 12(b)(6) motion is not whether the plaintiff can prove his claims, but whether he has alleged sufficient facts to state a claim. The court finds that Roberts has adequately stated a claim for malicious prosecution.

2.   Defamation and False Light Invasion of Privacy Claims

In the third cause of action, Roberts alleges that McAfee defamed him by publishing a press release regarding his termination, on May 30, 2006, and beyond. In the fourth cause of action, Roberts asserts a claim of false light invasion of privacy, based on McAfee's posting on its website the press release stating that Roberts had engaged in "improper" conduct and that McAfee terminated his employment as a result of such malfeasance. The court finds that the defamation and false light invasion of privacy claims fail to state a claim.

Defamation is effected by either libel or slander. Cal. Civ. Code § 44. Libel is "a false and unprivileged publication by writing . . . or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. A claim of defamation requires the following elements: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and that (5) has a natural tendency to injure or that causes special damage. Taus v. Loftus, 40 Cal. 4th 683, 720 (2007).

The elements of the tort of false light invasion of privacy are (1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, (2) the publicity was offensive to a reasonable person, and (3) the defendant acted with actual malice. Fellows v. Nat'l Enquirer, Inc., 42 Cal. 3d 234, 238-39 (1986); Reader's Digest Assn. v. Superior Court of Marin County, 37 Cal. 3d 244, 265 (1984); see also 5 Witkin, Summary of Cal. Law (10th ed. 2009), Torts, § 673.

"[A] false light action is in substance equivalent to a defamation suit." Johnson v. Harcourt, Brace, Jovanovich, Inc., 43 Cal. App. 3d 880, 893 (1974). While it is not necessary that the plaintiff be defamed, publicity placing a person in a highly offensive false

15

light "will in most cases be defamatory as well." Fellows, 42 Cal. 3d at 239.  Where a false-light invasion of privacy claim is in substance equivalent to an accompanying defamation claim, the false-light claim should be dismissed as superfluous. Kapellas v. Kofman, 1 Cal. 3d 20, 35 n.16 (1969).

McAfee argues that the defamation claim cannot succeed because it is barred by the one-year statute of limitations, because the statement on which the defamation claim is based is privileged, and because the statements at issue are not false statements of fact. Similarly, McAfee asserts, the invasion of privacy claim must be dismissed as time-barred; because it is absolutely privileged under Civil Code § 47; because it is not a false statement of fact, and because it is duplicative of the defamation claim.

The court finds that both the defamation claim and the false light invasion of privacy claim are time-barred.[1]  California has a one-year statute of limitations for defamation and false light invasion of privacy. See Cal. Code Civ. P. § 340(c).  The complaint in the present action was filed on September 16, 2009, more than three years after McAfee posted the May 30, 2006 press release.

The statute begins to run when the allegedly defamatory statement is first published to the public. See Cal. Civ. Code § 3425.3 ("No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture.")). Upon the first publication to the public, a "cause of action accrues and the period of limitations commences, regardless of when the plaintiff secured a copy or became aware of the publication." Shively v. Bozanich, 31 Cal. 4th 1230, 1245-46 (2003).

Under California law, website postings are subject to the single-publication rule for purposes of accrual of the statute of limitations, notwithstanding the fact that the website

---

[1] The court also finds that the false light invasion of privacy claim is duplicative of the defamation claim.

16

may operate/exist on a continuous basis.  See Traditional Cat Ass'n, Inc. v. Gilbreath, 118 Cal. App. 4th 392, 399-404 (2004).  "Under the single publication rule, one cause of action will arise, and the statute of limitations will commence running, upon the first general publication or broadcast of a tortious statement, notwithstanding how many copies of the publication are distributed or how many people hear or see the broadcast."  Id. at 395.

The "single publication" rule applies to content posted on the Internet.  Id. at 402-03; see also Sundance Image Tech., Inc. v. Cone Editions Press, Ltd., 2007 WL 935703 at *7 (S.D. Cal., March 7, 2007) (any argument that single publication rule does not apply to statements made on Internet "is foreclosed by Traditional Cat"); Long v. Walt Disney Co., 116 Cal. App. 4th 868, 871-74 (2004) (single publication rule applied to Internet posting and thus plaintiff's claims were time-barred).

As a further basis for dismissal, the court finds that the statement at issue is not a false statement of fact.  The objectionable statement is the statement that "the Company became aware of one episode involving the General Counsel in 2000 that was improper." To constitute defamation, the statement must be a statement of fact.  See Aisenson v. Am. Broad. Co. Inc., 220 Cal. App. 3d 146, 155 (1990); see also Ringler Assoc. Inc. v. Maryland Cas. Co., 80 Cal. App. 4th 1165, 1181 (2000).  Moreover, truth is an absolute defense to a defamation claim, and defendants "need not justify the literal truth of every word of the allegedly defamatory matter."  Ringler, 80 Cal. App. 4th at 1180-81.

The statement that McAfee terminated Roberts is a statement of fact, as is the statement that the reason given by McAfee for terminating Roberts was "improper conduct."  Nevertheless, the statement that Roberts was "involv[ed]" in "one episode . . . that was improper" is insufficiently factual, because it does not imply an objective fact that can be proved or disproved, but rather is an expression of subjective judgment.

That is, the question whether the conduct that led to the termination was actually "improper" is a matter of opinion.  While Roberts believes that his conduct was not "improper," and thus, that there is some dispute as to whether it was in fact improper, that does not make the statement that he was terminated for "improper" conduct a false

17

statement.  The statement cannot be proven false, as it does not state that his conduct was criminal or that it violated certain standards, or explain why his conduct or involvement was "improper," and it is too vague and subjective to be anything other than opinion.  Thus, it is a matter of opinion whether he engaged in "improper" conduct.

The court finds further that the result is the same, regardless of whether the defamation and false light claims are evaluated under the Rule 12(b)(6) standard, or under the standard for anti-SLAPP motions.

**CONCLUSION**

In accordance with the foregoing, the special motion to strike and the motion to dismiss for failure to state a claim are both GRANTED in part and DENIED in part.  The motions are DENIED with respect to the two malicious prosecution claims, and they are GRANTED with regard to the defamation and false light claims.  In addition, McAfee's request for judicial notice is GRANTED; and Roberts' Rule 56(f) motion is DENIED as moot, as it largely pertains to the two malicious prosecution claims.[2]

**IT IS SO ORDERED.**

Dated: March 8, 2010

　　　　　　　　　　　　　　　　　　　　
PHYLLIS J. HAMILTON
United States District Judge

---

[2] With regard to the defamation and false light claims, Roberts argues that discovery is necessary to resolve whether McAfee "republished" defamatory comments about his supposedly "improper" acts even after events showed their falsity, whether the statements were privileged, and whether they were false.  In light of the court's ruling that the claims are time-barred, and that the reference to "improper" behavior was a statement of opinion, not a statement of fact, discovery would not assist Roberts in his attempt to state a claim for either defamation or false light invasion of privacy.